1

2                      UNITED STATES DISTRICT COURT

3                      WESTERN DISTRICT OF NEW YORK

4

5

6    - - - - - - - - - - - - - X
     JOSEPH BARONE            )      17cv6877
7                            )
     vs.
8                                   Rochester, New York
     BAUSCH & LOMB INC, MORCHER
9    GmbH, and FCI OPHATHALMICS, INC
                                    August 27, 2018
10             Defendant.    )      4:00 p.m.
     - - - - - - - - - - - - - X
11   **MOTION HEARING**

12                      TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE ELIZABETH A. WOLFORD
13                     UNITED STATES DISTRICT JUDGE

14                      JOSEPH LIPARI, ESQ.
                   The Sultzer Law Group, P.C.
15                 14 Wall Street, 20th Floor
                   New York, New York 10005
16                 Appearing for J. Barone

17                 DANIEL SMULIAN, ESQ.
                   Greenberg, Traurig, LLP
18                 Metlife Building
                   200 Park Avenue, 39th Floor
19                 New York, New York 10166
                   Appearing for Bausch & Lomb
20

21

22

23

24   COURT REPORTER:   Karen J. Bush, Official Court Reporter
                        (585) 613-4312
25                      100 State Street
                        Rochester, New York 14614

```
 1              BARONE VS. BAUSCH & LOMB, ET AL

 2              CONTINUING APPEARANCES

 3              ARNOLD VANWALDOW, ESQ.
                Reed Smith, LLP
 4              599 Lexington Avenue
                New York, New York 54000
 5              Appearing for Morcher GmbH

 6              JAMES MICHAEL PAULINO, II, ESQ.
                Goldberg Segalla, LLP
 7              2 State Street, Suite 1200
                Rochester, NY 14614
 8              Appearing for FCI Ophthalmics, Inc.

 9
                     P R O C E E D I N G S
10
                     *          *          *
11

12

13

14              THE CLERK:  The Court calls the matter of Barone

15   vs. Bausch & Lomb, Inc. 17CV6877.

16              THE COURT:  Good afternoon.  Mr. Lipari, am I

17   pronouncing it correctly?

18              MR. LIPARI:  It is Lipari.

19              THE COURT:  I was not pronouncing it correctly.

20              MR. LIPARI:  Your Honor was close enough.

21              THE COURT:  Lipari.

22              MR. LIPARI:  Lipari.  The family name is Lipari.

23              THE COURT:  Lipari.  Hopefully I'll stick with

24   that.  Nice to meet you.

25              MR. LIPARI:  Nice to meet you.
```

1                    BARONE VS. BAUSCH & LOMB, ET AL

2                    THE COURT:  On behalf of Bausch & Lomb?

3                    MR. SMULIAN:  Smulian, Daniel Smulian.

4                    THE COURT:  Nice to meet you.

5                    MR. SMULIAN:  Nice to meet you, Judge.

6                    THE COURT:  And on behalf of Morcher, GmbH?

7                    MR. VONWALDOW:  Arnie VonWaldow.

8                    THE COURT:  How do you pronounce the last name?

9                    MR. VONWALDOW:  VonWaldow.

10                   THE COURT:  Nice to meet you.

11                   MR. VONWALDOW:  Nice to meet you.

12                   THE COURT:  Mr. Paulino is here on behalf of FCI

13   Op?

14                   MR. PAULINO:  Opthalmics.

15                   THE COURT:  Opthalmics.  Mr. Paulino and Mr.

16   VonWaldow do not have a motion pending.  It is B & L's motion

17   to dismiss.  You can stay seated at counsel's table and you can

18   stay seated.  You don't have to stand for oral argument.  If

19   you prefer to stand at the podiums, you can do that, but it may

20   be easier to stay at the tables.  The reason I'm saying to stay

21   seated, when you're standing, you're further away from the

22   microphone, sometimes more difficult to hear.

23                   Let me start off, it's Bausch & Lomb's motion and

24   I want to hear your arguments and hear from the Plaintiff.  Let

25   me start out with a question I have to both parties, which is,

1                    BARONE VS. BAUSCH & LOMB, ET AL

2       and it wasn't raised, I'm not so sure I have jurisdiction.   I

3       know there was a Notice of Removal that was based on the fact

4       or the allegation that substantial question of federal law are

5       involved.   But when I went and looked at the cases, it seems as

6       though there are cases in our circuit that reached some

7       different conclusions as to whether or not there was

8       preemption.   They were all based on diversity.   And there are

9       no allegations of diversity jurisdiction here.   Essentially

10      because of the offense of preemption or, as I understand it, or

11      perhaps because of the allegations that the failure to warn was

12      based on the failure to warn is required under federal law,

13      Bausch & Lomb is alleging that there is a substantial question

14      of federal law.   But I'm not so sure the case law would support

15      you on that because it's a New York State cause of action that

16      is --

17                    MR. SMULIAN:   It is a New York State cause of

18      action, your Honor.   It is our position that there is a

19      substantial issue of federal law because the state law claim

20      requires looking at -- it is based on the reporting of -- the

21      federal reporting statutes.   And there are cases -- I

22      apologize, your Honor, I don't have my moving papers.

23                    THE COURT:   And quite frankly, if I had been more

24      proactive in this, I would have notified everyone of this

25      issue.   I'm not going to hold you to anything that is said here

1                    BARONE VS. BAUSCH & LOMB, ET AL

2    today.  But I think that is an initial inquiry that I have to

3    get through.  I've done some research on it, my law clerks have

4    done some research on it.  And I have significant concerns over

5    whether or not I have subject matter jurisdiction.  I'll give

6    you a couple of cites.  If you can just bear with me for a

7    moment.  And obviously, I appreciate the fact that the

8    Plaintiff has not raised this issue, but subject matter

9    jurisdiction, of course, is not something that can be waived.

10   The one in our district or our circuit that I thought was the

11   most on point was a Connecticut case.  It's *Mihok*, M-i-h-o-k,

12   *vs. Medtronics, Inc.*, the cite is 119 F. Supp. 3d 22, District

13   of Connecticut from 2015.  Where the Court construed the

14   *Gunn-Grable* substantiality aspect of whether or not there is

15   jurisdiction in a circumstance like this is requiring the

16   construction and validity of a federal statute conduct by the

17   government under that law and whether the conduct is

18   permissible.  And it found that the limited fact-specific

19   application of FDA regulations was not substantial.

20                    MR. SMULIAN:  Just from memory, Judge, I know that

21   the *Bowdrie* versus -- *Bowdrie vs. Sun Pharmaceuticals*, I don't

22   have the cite in my head, but that was a case in the Eastern

23   District of New York.  I suspect that it's in our Notice of

24   Removal.  I would submit that that case is directly on point

25   and in the context of at least drugs and devices.  Also, I

1                    BARONE VS. BAUSCH & LOMB, ET AL

2    think, if I recall correctly, there is a case named *D'Allessio*

3    *vs. New York Stock Exchange*, it's a Second Circuit case.  It's

4    not in the drug and device context, but it is, I think, it

5    speaks to the issue of --

6                    THE COURT:  You cited *D'Allessio* in the Notice of

7    Removal.

8                    MR. SMULIAN:  Okay.

9                    THE COURT:  But I'm not seeing --

10                   MR. SMULIAN:  Not seeing *Bowdrie?*

11                   THE COURT:  No.  I'm looking at it real quick,

12   but, no, you do have it here.  I can take a closer look at

13   that.  You have it at paragraph 26 of your Removal.  I'm going

14   to want further briefing on this because, I mean, the fact, the

15   question of federal law is just the fact that you're claiming

16   it preempts.

17                   MR. SMULIAN:  Respectfully, Judge, I think that

18   the Plaintiff invoked federal law in their complaint.

19                   THE COURT:  But the New York State causes of

20   action --

21                   MR. SMULIAN:  But under --

22                   THE COURT:  Let me finish.  Don't interrupt me.

23   Rule of this Court, you interrupt me, you're going to annoy me.

24   The fact of the matter is, there is state law causes of action

25   that are based on a requirement under federal law, but there

```
 1                     BARONE VS. BAUSCH & LOMB, ET AL
 2      are still state law causes of action.
 3                     MR. SMULIAN:  That's true, Judge.  But under
 4      Grable, and I think under the cases -- under Bowdrie, under
 5      D'Allessio, I think you can still have a state law cause of
 6      action when --
 7                     THE COURT:  And that that would satisfy the
 8      substantial invocation of federal law?
 9                     MR. SMULIAN:  Yes, Judge, I think you can.  And I
10      would be happy to brief it further.  And I look forward to that
11      opportunity.
12                     THE COURT:  But it still is -- I mean, in other
13      words, even if -- and I appreciate Bausch & Lomb has made a
14      motion to dismiss.  But even if there was a requirement under
15      federal law that could serve as a basis for a state law claim,
16      it still is the state law claim, the state law remedy that is
17      being pursued here.
18                     MR. SMULIAN:  It is.  And I think this was exactly
19      the issue in Bowdrie in the case in the Eastern District.  It
20      was state law, it was a drug case, not a medical device case,
21      so the regulatory theory was slightly different, but similar
22      enough for, I think, these purposes.  And it was a failure to
23      warn cause of action that was asserted against the Defendant
24      drug manufacturer, a state law cause of action, but it relied
25      on allegations related to federal law in connection with the
```

1                  BARONE VS. BAUSCH & LOMB, ET AL

2     Defendant manufacturer's ability to change the label on its own

3     as opposed to going to the FDA to seek permission.  And so it

4     was a state law cause of action where the duty, I mean, the

5     claim turned on whether federal law permitted -- what federal

6     law required.  And so the court in that case found that there

7     was a substantial question of federal law even though there is

8     the cause of action is a state law cause of action and retained

9     jurisdiction.  And then, in response to the motion to dismiss

10    in that case, granted the motion to dismiss.

11                  THE COURT:  Okay.  Does Plaintiff's counsel have a

12    position on this that you're able to articulate right now?

13                  MR. LIPARI:  Well, the question is right now.  No,

14    your Honor.  I mean, Plaintiff certainly agrees with your

15    Honor's characterization of the complaint.  These are all state

16    law claims and is the question, is it a substantial implication

17    of federal law.  Plaintiff doesn't -- I don't want to

18    paraphrase cases that I don't have before me.  And I think we

19    would like the opportunity, if your Honor so chooses, to

20    perhaps put in some supplemental briefing on this issue.

21                  THE COURT:  Okay.  We'll set a schedule after we

22    hear oral argument on the pending motion to dismiss on that

23    issue as well, because I'm going to have to get through that

24    before and if we get to the other issues.  With that being

25    said, I appreciate that it's your motion, so why don't you go

```
1                    BARONE VS. BAUSCH & LOMB, ET AL

2       ahead?

3                    MR. SMULIAN:  Thank you, Judge.  As I introduced

4       myself, my name is Daniel Smulian on behalf of Bausch & Lomb.

5       We're here on Bausch & Lomb's motion to dismiss.  I don't know

6       if there is a particular place you would like me to --

7                    THE COURT:  It struck me that -- I appreciate

8       there are cases dealing with the express preemption issue,

9       which is your first argument.  It strikes me that the Northern

10      District case that is cited in the papers says -- reaches one

11      conclusion, and then there are some other cases in this

12      district reaching another conclusion.  It does seem as though

13      there is a split in authority.  Would you agree with that?

14                   MR. SMULIAN:  I would agree with that, Judge.  I

15      think the weight of authority in districts within the Second

16      Circuit favors our position.  But certainly the Northern

17      District case in Rosen comes out in Plaintiff's direction,

18      whereas Pearsall, in the Eastern District, comes out in our

19      direction.  I think Pearsall is fortified by a decision called

20      Ilarraza vs. Medtronics, also an Eastern District case.  It's

21      slightly different because it involves good manufacturing

22      practice regulations, but it sort of indicates the cases upon

23      which Rosen relies -- so, I think, Rosen relies on Stengel,

24      Rosen relies on Hughes, primarily.  Both of those cases are

25      sort of disfavored by the cases in -- by Pearsall and by other
```

1            BARONE VS. BAUSCH & LOMB, ET AL
2    cases in this district.  So, you know, I think when you look at
3    what the cases say, when you look at *Stengel*, for example,
4    *Stengel* is a Ninth Circuit case applying Arizona law.  And it
5    found that under Arizona law, Arizona law contemplates a duty
6    to warn third parties, which in the Ninth Circuit's
7    interpretation, they found was sufficient to parallel a duty to
8    provide adverse event reports to the FDA.  In *Hughes*, which is
9    a Fifth Circuit decision, the Court -- and Judge Wexler, in
10   *Pearsall,* specifically noted this -- that the Mississippi
11   statute encompassed a reporting requirement regarding adverse
12   events and malfunctions.
13            You know, I think what Judge Pearsall or what
14   Judge Wexler in *Pearsall* said, New York simply doesn't have the
15   requirements that -- the requirement that the *Stengel* court
16   found for Arizona, and that the *Hughes* court went for
17   Mississippi.  That New York has a duty to provide warnings to
18   physicians.  And I think there is a fundamental --
19            THE COURT:  And you think because -- and I want to
20   hear from Plaintiff's counsel, obviously -- but if I'm
21   understanding the Plaintiff's argument, it's that the duty to
22   provide a warning to the FDA would necessarily then result in a
23   warning to a physician, and therefore, that is a parallel claim
24   under state law that is being made here.  You can argue with
25   the factual basis for that, but, I mean --

1          BARONE VS. BAUSCH & LOMB, ET AL

2          MR. SMULIAN:   I'm trying to see if that

3     conceptually matches how I look at this, Judge.   The way I

4     would say it is, the Plaintiff alleges that everyone

5     acknowledges that there is a duty to report to the FDA under

6     federal reporting statutes.   I think the Plaintiff argues that

7     the New York duty to warn encompasses, you know, it encompasses

8     that duty.   And I would submit that it does not.   That the duty

9     to warn that exists under New York common law, because there

10    isn't a products liability statute like there is, for example,

11    in Mississippi, is a duty to provide adequate warnings to the

12    user, which in the case of prescription medical devices is the

13    physician.   And particularly, in the context of one of the

14    cases we cited, *Aaron vs. Medtronics*, I think, makes this clear

15    that the warnings that are provided to physicians in the form

16    of device labeling.   That is how manufacturers provide warnings

17    to physicians.   That is a very different thing.   Warnings --

18    adverse event reports are not warnings.   So, I think I look at

19    the way that Judge Wexler in *Pearsall* sort of said, look, there

20    is a duty to provide warnings and that there is a duty to

21    provide adverse event reports to the Food and Drug

22    Administration, and those are not the same thing, and,

23    therefore, they are not parallel.   Because when you look at --

24    when you start with the governing framework, so section 360K(a)

25    of Medical Device Amendments to the Food, Drug, and Cosmetic

1                    BARONE VS. BAUSCH & LOMB, ET AL

2    Act and there is an express preemption clause and that express

3    preemption clause says that no state or political subdivision

4    can impose requirements that are different from or in addition

5    to the federal requirements.  So when you look at the cases and

6    you figure out what that means, it means that the state -- in

7    order for a claim to be parallel, it means that the state law

8    duty -- and the cases use different words -- but either has to

9    be identical or genuinely equivalent or the same.  So --

10                    THE COURT:  Or it can't add any additional

11   requirement.

12                    MR. SMULIAN:  It can't add any additional thing.

13   And so that is why in *Pearsall*, the Court held that the federal

14   -- I'm quoting here -- "The federal requirements require that

15   adverse events and other reports be made to FDA.  While New

16   York law may require New York manufacturers to warn the medical

17   profession, that is not the same as a duty to report to FDA.

18   Thus, since the state law duty imposes obligations that are

19   different from or in addition to the federal requirement, the

20   court finds that the Plaintiff's failure to warn claim is

21   preempted."  *Pearsall* is hardly alone in finding that the duty

22   of a particular state isn't parallel to the federal reporting

23   requirements.  So *Aaron v. Medtronic*s is an Ohio case, it's

24   cited in our brief.  And it functionally says the same thing,

25   and goes onto say, you know, "Doctors are warned of the risks

 1                    BARONE VS. BAUSCH & LOMB, ET AL

 2     of the medical device through the device's labeling, not

 3     through adverse event reports submitted to the FDA."  And the

 4     reason that is important is because the Plaintiffs haven't and

 5     can't allege that certain warnings weren't provided to the

 6     labeling.  That is the very essence of a preemptive claim under

 7     *Riegel*, because the FDA prescribed -- the FDA approved the

 8     device pursuant to the PMA process, and set the content of the

 9     labeling.  And it can't be changed in the absence of a

10     supplementary PMA application.  So that is the reason that

11     Plaintiffs -- the Plaintiff hasn't alleged that there is a

12     problem with the labeling itself.  This is an end run around

13     the labeling by saying, well, you didn't submit adverse event

14     reports.

15                    THE COURT:  Explain to me your argument about

16     implied preemption.  I mean, in other words, this is just an

17     alternative argument, or, I guess, and I was having a little

18     trouble understanding why, if there is an express preemption,

19     why would there also then be implied preemption?

20                    MR. SMULIAN:  I think the implied preemption, the

21     way I look at it is a sort of the flip side of the same coin of

22     preemption, and so when you look at certain decisions, courts

23     sometimes find both express and implied, and sometimes courts

24     render a decision to a failure, an alleged failure to make

25     adverse event reports under implied preemption.  I guess it's

```
 1                  BARONE VS. BAUSCH & LOMB, ET AL
 2      both an alternative -- and, I mean, it stands on its own, I
 3      think, as you see in some cases that we've cited, but it also
 4      is -- it joins the express preemption.  I mean, the idea is
 5      that the Food, Drug, and Cosmetic Act, there is no private
 6      right of action under the Food, Drug, and Cosmetic Act.  So
 7      what the Supreme Court explained in Buckman is that, and I'm
 8      quoting, "The FDC leaves no doubt, it is the federal government
 9      rather than private litigants who are authorized to file suit
10      for noncompliance."  And so in subsequent decisions in the
11      Eighth Circuit decision in In Re Medtronics vs. Sprint Fidelis,
12      623 F. 3d 1200, in 2010, it held that a claim that a
13      manufacturer failed to file an adverse event report is merely
14      an attempt by a private party to enforce the MDA, the Medical
15      Device Amendments, and those are closed by Section 337 as
16      construed by Buckman.  There is this quote that you see in a
17      lot of these -- in a lot of the briefs from a case called Riley
18      vs. Cordis, and it's a difficult quote conceptually, but I keep
19      going back to it.  And the quote is, "To avoid implied
20      preemption, the Plaintiff must be suing for conduct that
21      violates the FDCA, but the Plaintiff must not be suing because
22      the conduct violates the FDCA."  So it sort of, it's the nature
23      of a parallel non-impliedly preempted claim.  And I think Riley
24      said also one thing that is particularly important here, and it
25      says, and I'm quoting "The conduct on which the claim is
```

```
1                    BARONE VS. BAUSCH & LOMB, ET AL
2       premised must be the type of conduct that would traditionally
3       give rise to liability under state law and that would give rise
4       to liability under state law even if the FDCA had never been
5       enacted.  If the Defendant's conduct is not of this right and
6       then the Plaintiff is suing of a violation of the FDCA, no
7       matter how the Plaintiff labels the claim, and that Plaintiff's
8       claim is, therefore, impliedly preempted."  So here the claim,
9       as asserted by the Plaintiff, is not directed to the type of
10      conduct that would traditionally be a basis for a claim even if
11      the FDCA had never been enacted.  I mean, so as the Court
12      explained in Pinsonneault, which is another case we cited in
13      our brief, "The failure to properly or timely warn the FDA via
14      the NDR process as opposed to warning a doctor or patient of a
15      device is dangerous, it is not a type of conduct that would
16      give rise to liability even if the FDCA had never been
17      enacted."  So --
18                    THE COURT:  Is your point that in order for, if,
19      in fact, the Plaintiff was truly alleging what the Plaintiff is
20      claiming its alleging or is alleging, that this is a state law
21      claim based on failure to warn, to provide notice to his
22      physician that would have prevented the injuries that he
23      suffered here, that if that was, in fact, what was being
24      alleged and it isn't expressly preempted, it must necessarily
25      be implicitly preempted because he is really trying to bring a
```

1                    BARONE VS. BAUSCH & LOMB, ET AL

2     claim that is the exact claim as to what is required under

3     federal law?  I mean, in other words -- go ahead.

4                    MR. SMULIAN:  That he is trying to -- our position

5     would be that the Plaintiff is trying to enforce the Food,

6     Drug, and Cosmetic Act.

7                    THE COURT:  And if he isn't doing that, then the

8     Food, Drug, and Cosmetic Act preempts his claim.  And if he is

9     doing it, he doesn't have standing to do it and it's implicitly

10    preempted because he can't bring a claim under federal law?

11                   MR. SMULIAN:  That's right.  And all of this goes

12    back, there is no New York State law duty to warn the FDA.

13                   THE COURT:  And if there was, then it may be a

14    different argument at least on express preemption?

15                   MR. SMULIAN:  That's right, your Honor.  Now, once

16    you get past expressed and implied preemption.

17                   THE COURT:  I think your causation argument is a

18    descent argument.  I just have concerns about dealing with that

19    argument on a motion to dismiss 12(b)(6).  I mean, I think

20    there is a lot of case law that suggests that causation is

21    often a fact issue or a question of fact, causation is alleged

22    here.  I know your argument is it's not plausible that the

23    failure to warn the FDA that --

24                   MR. SMULIAN:  That's right.  And there is one, I

25    guess, additional point I wanted to make as I was getting ready

1                    BARONE VS. BAUSCH & LOMB, ET AL

2      for the argument that as I thought about it more.  The surgery

3      in this case, the Plaintiff's surgery occurred in 2015.  The

4      only alleged underreporting occurred in 2008 and 2009.  There

5      is no alleged underreporting that occurred in 2010, and there

6      is no alleged underreporting that occurred in 2011, '12, '13 or

7      '14 or the first half of '15 because the surgery was in August.

8      I submit that it's implausible that the doctor -- that the

9      Plaintiff's physician allegedly relied upon information and

10     belief on alleged underreporting from between six and seven

11     years prior to the surgery at issue in this case.  I don't

12     think that makes -- putting everything else aside, I don't

13     think that makes sense.  I think there is an issue with the

14     fact that the allegation regarding the doctor's alleged

15     reliance is made on information and belief.  I think that there

16     are cases, and they are cited in our brief, that speak to the

17     fact that if you're going to make a critical allegation on

18     information and belief, then you have to identify the

19     information or facts that give rise to that belief.  But,

20     putting that aside, I think when you look at the cases --

21     Plaintiff cites a case called *Michajlun*.  It's spelled

22     M-i-c-h-a-j-l-u-n.  And in *Michajlun*, the issue in that case

23     was in 2012.  And to be perfectly candid, your Honor, the

24     Plaintiff has lifted his allegations in this case from the

25     allegations in *Michajlun*.  If you compare the factual

```
 1                    BARONE VS. BAUSCH & LOMB, ET AL
 2      allegations in the Michajlun decision to the complaint, the
 3      amended complaint in this case, they are identical.  But in
 4      Michajlun, the Defendant raised the causation issue, and the
 5      Court said -- the Court said, well, you know, it's admittedly
 6      thin that in 2012, a surgery going back to the 2008 and 2009
 7      alleged underreporting and adverse events, and I admit it's
 8      thin, but I'll let it go.  I'll let the claim proceed.  You
 9      know, this is now over three years -- the facts in this case
10      are over three years later.  The surgery is over three years
11      later.  If Michajlun was thin, was admittedly thin by a court
12      construing California law, which, also, like Mississippi, has
13      its own statutory corollary for federal law, but if a court
14      construed the case in Michajlun that that was thin on causation
15      but let it proceed, this case, I mean, this case is thin to the
16      point of breaking in terms of it being plausible.  It's just
17      the idea -- I have made my point.  I don't need to keep
18      reiterating.  I think the idea that a doctor in 2015 is going
19      to go back to the -- also, we didn't talk about the fact that
20      there are four alleged reports, according to the Plaintiff,
21      that were not made in 2008 and 2009.  I don't, just for the
22      avoidance of doubt, we don't concede that there is any
23      underreporting, but, again, accepting the allegations as true,
24      it isn't plausible that the Plaintiff's physician in 2015
25      relied on -- that four non reports in 2008 and 2009 were what
```

1               BARONE VS. BAUSCH & LOMB, ET AL

2    made his decision.

3               The only other thing that I just wanted to quickly

4    address -- well, two things.  One, woven into Plaintiff's

5    amended complaint are allegations that seem to say that Bausch

6    & Lomb breached a duty to warn Plaintiff directly.  I can't

7    tell if that is really intentional.  But New York has the

8    learned intermediary doctrine that provides that a manufacturer

9    of medical devices, prescription medical devices, owes a duty

10   to warn the physician, not the Plaintiff.  So to the extent

11   that Plaintiff's claim is that we failed to warn him, I would

12   submit that claim needs to be dismissed because of the learned

13   intermediary doctrine.

14              The only other thing I would say is there are sort

15   of theoretical cross claims of FCI against Bausch & Lomb and

16   Morcher, I say, theoretically, it's hard to tell whether they

17   are an actual cross claim or affirmative defense.  I submit

18   those should be extinguished if our liability to the Plaintiff

19   is extinguished based, you know --

20              THE COURT:  There is no so-called cross claim

21   asserted in the answers by your codefendants, are there or

22   there are not?  They are shaking their head no.

23              MR. SMULIAN:  Okay.  Then in that -- so maybe it's

24   just an affirmative defense and we don't have to worry about

25   it.  It's styled as an affirmative defense and also a cross

```
 1                    BARONE VS. BAUSCH & LOMB, ET AL
 2      claim.  I wanted to say, to the extent it's an actual cross
 3      claim --
 4                    THE COURT:  I guess I didn't see that.  Are there
 5      cross claims?
 6                    MR. SMULIAN:  I mean --
 7                    THE COURT:  If the affirmative defense is based on
 8      a codefendant's alleged culpability or liability, that doesn't
 9      make it a cross claim.
10                    MR. SMULIAN:  It's just, it's styled -- it's
11      styled both as an affirmative defense and as a cross claim and
12      it's for indemnification and contribution, so it is in FCI's
13      answer.
14                    THE COURT:  I'm looking at that.  Well, I guess
15      the answer was filed in state court.  I'm looking at FCI and
16      Morcher's answers right now.  And it does say "and cross claim
17      against codefendants."
18                    MR. SMULIAN:  And, your Honor --
19                    THE COURT:  Just so the record is clear, I'm
20      looking at FCI's answer, which in its sixteenth affirmative
21      defense asserts a cross claim "failure to join in necessary
22      party."  And then cross claim for contribution.  Your point
23      is --
24                    MR. SMULIAN:  My point is if that is actually a
25      cross claim as opposed to an affirmative defense, that it
```

```
 1                    BARONE VS. BAUSCH & LOMB, ET AL
 2       should go away, too, if your Honor grants our motion to
 3       dismiss.
 4                    THE COURT:  It doesn't look like Morcher's answer
 5       has the affirmative defense characterized as cross claims, it's
 6       FCI.  I guess, Mr. Paulino, let me ask you, since you represent
 7       FCI.  Would you agree with that point, that if, in fact, Bausch
 8       & Lomb's motion to dismiss is granted, that it's out of the
 9       case or would FCI be taking the position that somehow it has a
10       separate --
11                    MR. PAULINO:  I guess --
12                    THE COURT:  Make sure your microphone is on there.
13                    MR. PAULINO:  It's not part of the motion that we
14       sought.  I apologize, I'm not prepared to argue it.  We didn't
15       brief it or think it through.  We would have the contribution
16       law under New York claims.  If there are New York claims that
17       exist against them, we would have the affirmative defense under
18       New York law to say another party is culpable, whether they are
19       in the New York claim, our contribution claim would be
20       independent of whether or not the Plaintiff's causes of action
21       may or may not stay.  If Plaintiff doesn't sue someone, it's
22       not going to prevent my client from bringing a contribution
23       claim against them.
24                    THE COURT:  I guess the point is that if, in fact,
25       Bausch & Lomb's motion to dismiss is granted, that doesn't act
```

1                    BARONE VS. BAUSCH & LOMB, ET AL

2      as a bar with prejudice for any contribution or indemnification

3      claim to be asserted by either one of the Defendants in the

4      event that you have some kind of liability to the Plaintiff.  I

5      mean, Bausch & Lomb can certainly argue against it, but I don't

6      think -- it hasn't been briefed to me.

7                    MR. SMULIAN:  That's right.

8                    MR. PAULINO:  No.  I would just say, your Honor,

9      it's not part of the motion and I don't believe they are

10     requesting that relief, to the best of my knowledge.  To your

11     Honor's point, our contribution claims, under New York law,

12     have nothing to do with Plaintiff's claims against Bausch &

13     Lomb.

14                   THE COURT:  Right.  In other words, well, a

15     codefendant could have a claim against Bausch & Lomb for the

16     faulty device.  I mean, but it's not based on the failure to

17     warn that the Plaintiff is suing -- I mean, there could be a

18     contractual contribution claim, I don't know if there is.  That

19     wasn't raised in the motion.

20                   MR. SMULIAN:  Correct.  I was just thought I was

21     clarifying our position, but I guess it's something we can take

22     up with FCI.  There is nothing -- assuming that for the sake of

23     argument that your Honor grants our motion to dismiss, assuming

24     that FCI -- we will then have to make a motion to dismiss.

25                   THE COURT:  I guess the question is, would Bausch

```
1                    BARONE VS. BAUSCH & LOMB, ET AL
2      & Lomb still be part of the case by virtue of the cross claim
3      that has been asserted by an affirmative defense?
4                    MR. SMULIAN:  Right, because there is no cross
5      claim that would give allegations to liability.  You're right,
6      it's not briefed.  But, I just wanted to sort of put our
7      position down, which is that we will brief, if necessary, that
8      if we get out of the case as to the Plaintiff's claims, I don't
9      see a basis for holding us in the case based on the affirmative
10     defense that is in that answer.
11                   THE COURT:  All right.  Well --
12                   MR. PAULINO:  Just to clarify, your Honor.  That
13     relief was not requested in the motion, so it's not an issue
14     that is pending before the Court; is that correct?
15                   THE COURT:  Right, that is correct.  So let me
16     hear -- were you finished?
17                   MR. SMULIAN:  Yes, Judge.
18                   THE COURT:  Let me hear from Mr. Lipari.  And I
19     guess my first question is, how do you reconcile the express
20     preemption?  I mean, federal law has a duty to warn the FDA
21     through adverse event reporting, and how does that possibly get
22     transformed into a duty to warn under New York State law the
23     medical provider?  How is that possibly parallel?
24                   MR. LIPARI:  Your Honor, we would submit that
25     Judge Wexler simply got it wrong in the *Pearsall* decision and
```

1                    BARONE VS. BAUSCH & LOMB, ET AL

2      the *Rosen* decision was right, and that is for a few reasons.

3      First of all, in the *Rosen* decision, the Court recognized that

4      given the FDA's publication of adverse events through the MAUDE

5      system, which is arguably one of the reasons that reporting is

6      required in the first place, that a failure to report to the

7      FDA essentially amounts to a failure to report to and warn the

8      medical community, and therefore, the state and federal

9      requirements are parallel.  Judge Wexler in the *Pearsall* case

10     didn't engage in the analysis and didn't grapple with the issue

11     of MAUDE and the impact or effect of MAUDE.  Where, in effect,

12     the *Rosen* decision, an analysis of the MAUDE database was

13     crucial.  I'll say this, in the *Rosen* decision, and this is

14     unlike the *Pearsall* decision --

15                    THE COURT:  The MAUDE analysis was undertaken with

16     respect to the express preemption in *Rosen*?

17                    MR. LIPARI:  Correct, your Honor.  Well, your

18     Honor, so the Court talks about MAUDE generally, and then seems

19     to indicate that, given that New York law imposes a continual

20     obligation -- and I'll back up and talk about where the

21     continuing obligation is articulated in the body of cases --

22     but the exercise of reasonable care and warning of potential

23     dangers through the reporting essentially allows that

24     manufacturer to discharge his duty or, rather, its duty.  And I

25     could point to the MAUDE-related language if that is what your

1                 BARONE VS. BAUSCH & LOMB, ET AL

2     Honor is specifically calling for.

3                 THE COURT:  Sure.  I mean, I am looking at page

4     184 through 185 of the *Rosen* decision, which is a discussion of

5     express preemption, and I don't see a reference to it.  I see

6     the Court is essentially relying on the *Hughes* decision from

7     the Fifth Circuit, and the *Medtronics* decision from the Ninth

8     Circuit, and then discussing why those cases are not not

9     applicable.

10                MR. LIPARI:  Well, your Honor, later on in the

11    decision, and it's right above --

12                THE COURT:  And do you have a page number?

13                MR. LIPARI:  I'm not sure, your Honor.  It looks

14    like it's three paragraphs above the conclusion.

15                THE COURT:  MAUDE, all capitalized.

16                MR. LIPARI:  Correct, your Honor.

17                THE COURT:  So, page 187, that is in the

18    discussion of causation.

19                MR. LIPARI:  Well, that's true, your Honor, but

20    it's tied back in terms of -- so, I have, your Honor, I have

21    page 19 of 22.  And I can give you -- let me try to give you a

22    pin cite, your Honor.  It looks like it would be pin cite 185

23    or between 185 and 186, okay?  Does that help, your Honor?

24                THE COURT:  Yeah, I'm there.

25                MR. LIPARI:  So there, the Court indicates

1          BARONE VS. BAUSCH & LOMB, ET AL

2    "Plaintiff points out that the FDA publishes adverse events and

3    MDRs in a public, searchable database called the Manufacturer

4    and User Facility Device Experience, MAUDE, which physicians

5    and the general public may access, etc.  Thus Plaintiff argues

6    that the Defendant's failure to timely report to the FDA led to

7    a violation in state law in that the Defendants also did not

8    exercise reasonable care in informing the medical community of

9    known risks."  That is within the context of the express

10   preemption section.  The Court then indicates that, "In view of

11   that reporting, it's parallel, not different or in addition

12   to."

13          That was part one of my argument.  I'm sorry, go

14   ahead.

15          THE COURT:  I'm going to submit to you that that

16   is somewhat tortured logic.  To, essentially, I look at this,

17   the *Rosen* decision, as though the Court was trying to recognize

18   under New York State law that there is a same requirement that

19   basically suing under state law for failure to warn is not

20   adding or it's parallel to the requirements under federal law

21   and that is just not the case.

22          MR. LIPARI:  Okay, your Honor, so it's our

23   contention --

24          THE COURT:  Let me just say one more thing.

25   Because there is no requirement under state law that you make a

```
 1                    BARONE VS. BAUSCH & LOMB, ET AL
 2      report of an adverse event to the FDA.
 3                    MR. LIPARI:  So, your Honor, I think that the
 4      Court essentially connects those dots and it's not tortured
 5      logic, in our estimation, and that is because of its reliance
 6      of the Bee case and the Baker vs. St. Agnus case, which it
 7      references specifically in its decision.  I can point to that
 8      in a moment.  And essentially, here is the point.  If you look
 9      at the cases, especially Baker vs. St. Agnus, that is a Second
10      Department New York State case from 1979, and just talks about
11      strict liability law, failure to warn New York State juris
12      prudence.  And that court indicates that a manufacturer has a
13      duty to take steps as are reasonably necessary to bring adverse
14      event knowledge to the attention of the medical profession.
15      So, your Honor, and that was first articulated, as we just
16      stated, in Baker vs. St. Agnus.  And thereafter, there is a
17      nice recitation of it and explanation of it by the Eastern
18      District of New York in Bee, which is B-e-e, Eastern District
19      2014.  And there the Court has clearly articulated that that is
20      exactly what New York State law requires.  So, you know, it's
21      our contention, and, frankly, it's the reasoning, which we
22      would argue is not tortured, in the Rosen case.  Under federal
23      law, adverse events must be reported within 10 days, given the
24      MAUDE system reporting adverse events and thus complying with
25      federal law is the very way to discharge one's duty under state
```

1                    BARONE VS. BAUSCH & LOMB, ET AL

2    court law, which, as *Bee* and *Baker* indicate, are taking steps

3    that are reasonably necessary to bring adverse event knowledge

4    to the attention of the medical profession.

5            THE COURT:  If you get past express preemption,

6    then you have the implied preemption argument and the causation

7    argument that B&L is focused on.  Why don't you focus on that

8    argument?

9            MR. LIPARI:  Your Honor, it's essentially the flip

10   side of the same coin.  And the quote that was attributed to

11   the *Riley* case, we briefed it, that's fine.  That Plaintiff

12   must sue for conduct that violates the FDCA, but not because of

13   conduct that violates FDCA.  And, your Honor, that is precisely

14   what we are doing here.  We're suing because there was

15   underreporting, which was in violation of that particular CFR

16   provision.  And by virtue of doing that, the manufacturer was

17   not taking steps reasonably necessary to bring adverse event

18   knowledge to the attention of the medical profession.  And so,

19   that line of implied preemption cases, especially Buckley --

20   *Buckman*, rather, they are completely inapposite and are very

21   factually distinguishable from the case here.  In *Buckman*, it's

22   not a controversial proposition.  Plaintiff was attempting a

23   free-standing federal cause of action based on nothing but the

24   violation of FDA regs.  There was no underlying state court

25   action that was even tied in.  It was, you violated the FDA

1                BARONE VS. BAUSCH & LOMB, ET AL

2    regs, and, therefore, you're liable.  And that is really a

3    perfect example of when claims are impliedly preempted.  Here,

4    Plaintiff is not bringing a cause of action, you know,

5    essentially saying that the FDCA gives Plaintiff a private

6    right of action and now they are suing under the FDCA.  We're

7    suing only under the state tort juris prudence or statute or

8    cause of action, which is perfectly articulated by the court in

9    *Rosen*.

10                THE COURT:  What about the causation argument?

11   Your focus seems to be, well, if the Defendant complied with

12   its federal obligations and made the report to the FDA, then,

13   by definition, the medical professional who needed to be warned

14   under state law would have ultimately been warned, but that

15   isn't a duty flowing directly from the Defendant to the medical

16   professional under the federal law requirements.  It's a state

17   law requirement, but that is arguably preempted by any federal

18   law.

19                MR. LIPARI:  Well, your Honor, the duty flows to

20   the doctor.

21                THE COURT:  But it's not a duty flowing from this

22   defendant to the doctor.

23                MR. LIPARI:  You're right.

24                THE COURT:  The duty from this defendant flows to

25   the FDA.

```
 1                 BARONE VS. BAUSCH & LOMB, ET AL
 2                 MR. LIPARI:  Understood, your Honor.  But this
 3       defendant has a duty, under the FDA regulations and under state
 4       court law, to warn the medical community.
 5                 THE COURT:  No, it doesn't.  That is the whole
 6       point.  This defendant has a duty to warn the FDA.  The FDA
 7       then has certain mechanisms in place to provide information to
 8       the medical community.  But this defendant doesn't have any
 9       duty to warn the medical professional.  It's the FDA and the
10       FDA's database, and what the FDA decides to do with that
11       database.
12                 MR. LIPARI:  We agree that the Defendant has a
13       duty to warn or bring the adverse reports to the FDA's
14       attention, we agree with that.  However, we would disagree with
15       your Honor's statement just a moment ago that they don't also
16       have a duty to warn the medical community.  And respectfully,
17       Plaintiff's submit that was articulated in the *Bee* case and
18       *Baker* case, and they have a responsibility to bring this to the
19       FDA and that is to bring to the medical community.
20                 THE COURT:  Isn't there another purpose?  Bringing
21       these adverse events to the attention of the FDA serves
22       multiple purposes?  One could be because the FDA has the
23       database, the MAUDE database, that provides these disclosures
24       to the medical community.  But another purpose could be for FDA
25       regulation and to ensure the FDA is regulating these devices
```

1              BARONE VS. BAUSCH & LOMB, ET AL

2     and is updated on any new information that pertains to the

3     devices.  I'm sure those are just two of the various purposes

4     for why the FDA has these regulations in the first place.  But

5     how the FDA decides to disseminate that information doesn't --

6     how does that transform, in other words, how does what the FDA

7     decides to do with the information transform the Defendant into

8     having a duty under federal law to warn the medical profession?

9              MR. LIPARI:  Okay.  Your Honor, we would suggest

10    as follows.  So, first of all, and I don't mean to keep beating

11    this drum, but, again, under state tort law, their duty is to

12    take steps that are reasonably necessary to bring reporting to

13    the attention of the medical profession.  Okay.  One step that

14    is reasonably necessary is simply to comply with federal law.

15    And then there was an argument within Bausch & Lomb's brief

16    that, well, there is not an automatic reporting to MAUDE.  It's

17    not a foregone conclusion that there is reporting to MAUDE.

18    But first, this is the reasonably necessary step that needs to

19    be taken to disseminate this to the medical community through

20    the FDA.  And, moreover, as a practical matter, this is what

21    the FDA does.  The FDA makes this publically available through

22    the MAUDE system.

23              THE COURT:  So, I take it a jury instruction in

24    this case, for instance, would not be a typical failure to warn

25    under state law, because there is other -- in other words, one

 1                BARONE VS. BAUSCH & LOMB, ET AL

 2     could argue that there are much more effective reasonable steps

 3     that a manufacturer could take to warn the medical community

 4     other than reporting it to some third-party federal regulatory

 5     agency.

 6                MR. LIPARI:  Your Honor, this is how they are

 7     reported.  The whole purpose of the reporting requirement and

 8     the reporting regiment and the whole purpose of MAUDE, if one

 9     looks at the FDA's statement on MAUDE, is to disseminate this

10     to the public and medical community and other interested

11     individuals.

12                THE COURT:  What about if there was no federal

13     preemption, though?  Under state law would there be any other

14     duty on the part of the Defendant that the Plaintiff would be

15     arguing that the manufacturer had to comply with here in terms

16     of warning the medical professional?

17                MR. LIPARI:  Minimal steps that are reasonable to

18     alert the medical community.

19                THE COURT:  Isn't there a state database or no?

20     In other words, there is no state, under New York State law,

21     the Department of Health doesn't have any kind of database that

22     would collect this information?

23                MR. LIPARI:  Your Honor, it's our understanding

24     that this is a class 3 medical device, and as part of the

25     regulations --

1               BARONE VS. BAUSCH & LOMB, ET AL

2               THE COURT:  I'm not talking about this device in

3     particular.  You have a failure to warn cause of action against

4     a manufacturer under state law that -- and there isn't any

5     preemption argument.  Wouldn't the Plaintiff be contending that

6     the duty on the part of that defendant to warn would be far

7     more than just notifying the FDA about any adverse events?

8               MR. SMULIAN:  May I answer that one?

9               THE COURT:  Well, let's hear from Mr. Lipari

10    first.

11              MR. LIPARI:  Well, your Honor, is there a state

12    counterpart database?  Not to my knowledge, your Honor.  But

13    beyond that, it would be our contention that the minimal duty,

14    the minimum duty is set forth in those two cases, *Bee* and

15    *Baker*, and, frankly, it coincides perfectly and parallels

16    Defendant's obligation under federal law and that is to report

17    adverse events.  And it necessarily follows that when you

18    report those adverse events, which you're obligated no do under

19    federal law, it's put into a database and the medical community

20    becomes aware of it.  It coincides perfectly, it parallels

21    perfectly, and that wasn't done here.  We have several

22    incidents of adverse reporting or, rather, underreporting.

23              THE COURT:  Anything else, Mr. Lipari?

24              MR. LIPARI:  Certainly.  Just a few points, your

25    Honor.

1              BARONE VS. BAUSCH & LOMB, ET AL

2              THE COURT:  Sure.

3              MR. LIPARI:  So, my adversary indicated that it

4    stretches credulity and defies credulity and almost to the

5    breaking point of how much time elapsed between the time of

6    events that were underreported and the surgery.  And it's our

7    contention that is a red herring because, you know, the time

8    that elapsed is, frankly, of no moment.  It's about the number

9    of adverse events making an impact on the doctor's decision to

10   recommend the product and having a conversation with the

11   patient.  It's all encompassed in the MAUDE database.  It

12   doesn't matter if it's from 2011 or 2014.  Defendant sort of

13   characterizes it as, well, this doctor has to search all the

14   way back and all these years elapsed.  It's housed under one

15   MAUDE database, which, arguably, arms the Defendant or rather

16   arms the doctor with knowledge so that he can have a

17   conversation with his patient about doing a risk/benefit

18   analysis.

19             THE COURT:  Anything else?

20             MR. LIPARI:  I would just say, your Honor, that

21   the issue of subject matter jurisdiction, which your Honor

22   raised at the outset, is a threshold issue.

23             THE COURT:  It is.  I'm going to give you all some

24   cites before we leave here today of the cases that we found

25   that were raising a concern on my part, but go ahead.

1                    BARONE VS. BAUSCH & LOMB, ET AL

2                    MR. LIPARI:  Right.  So, again, it's our position

3        it's a threshold issue, which should be decided, given that

4        we've characterized it as a threshold issue, first, before we

5        get into any of the substantive issues.

6                    THE COURT:  Okay.  Thank you.  You wanted to

7        respond and maybe respond to the argument about the MAUDE

8        database?

9                    MR. SMULIAN:  That too.  I'll jump around, I

10       apologize, your Honor.

11                   THE COURT:  That's okay.

12                   MR. SMULIAN:  As a starting point, I appreciate

13       that Plaintiff's counsel has picked up on your Honor's

14       potential scepticism of subject matter jurisdiction, but the

15       fact is, and you raised it before --

16                   THE COURT:  He also didn't like my reference to

17       the tortured logic in *Rosen*.

18                   MR. SMULIAN:  And he didn't make a motion to

19       remand.

20                   THE COURT:  But that is irrelevant, you know,

21       because I have to determine whether or not I have subject

22       matter jurisdiction.

23                   MR. SMULIAN:  Absolutely, I understand it's not

24       waivable, but just in terms of Plaintiff's taking up the cause.

25                   THE COURT:  It doesn't matter, though.

1                    BARONE VS. BAUSCH & LOMB, ET AL

2                    MR. SMULIAN:  I know.  A couple of things, just

3    jumping around.  The Plaintiff's conception of the duty under

4    New York law of a manufacturer that he referred to from *Baker*

5    and the *Baker vs. St. Agnus* and the *Bee* case, those are drug

6    cases, and those drug cases did not exist in the context of --

7    there was nothing in the decisions about federal preemption.

8    The question that your Honor was asking, and this is important,

9    and was asking the Plaintiff, in the absence of preemption,

10   what would the Plaintiff's claim be?  The Plaintiff's claim

11   would be that the labeling was insufficient.

12                   THE COURT:  But the labeling to the physician.

13                   MR. SMULIAN:  That the labeling that accompanies

14   every medical device, that is the failure to warn.  The fact

15   is, they can't make that claim here under *Riegel* and all of the

16   cases that follow *Riegel,* they can't say there was a failure in

17   your labeling.  This is all a tortured exercise to claim that

18   there were risks that were not on the labeling that somehow we

19   owed a duty to warn.

20                   Going to the question of whether a parallel duty

21   exists.  There is a case, *Wolicki-Gables vs. Arrow*, it is an

22   Eleventh Circuit case from 2011, and it explains the

23   requirement like this or parallel claim.  It says, "State and

24   federal requirements are not generally equivalent if a

25   manufacturer could be held liable under the state law without

1                    BARONE VS. BAUSCH & LOMB, ET AL

2     having violated the federal law."  Here, I mean --

3                    THE COURT:  That is clearly the case here.

4                    MR. SMULIAN:  Right.  So they are not genuinely --

5     I think that concept.

6                    THE COURT:  I mean, state law, as you indicated, I

7     mean, you would have the additional requirement to have a

8     warning label or take reasonable steps.  But, I mean, you've

9     got to define it more specifically than just "reasonable

10    steps."  I mean, any negligence theory is reasonableness.  And

11    under that line of thinking, you would never have federal

12    preemption.

13                   MR. SMULIAN:  Right.

14                   THE COURT:  So reasonable steps, under state law,

15    encompasses a broad array of activity.  Whereas, federal law,

16    it's you have to provide a report of adverse events to the FDA.

17                   MR. LIPARI:  Your Honor, can I make one point?  I

18    think that I mentioned phraseology from the *Rosen* case at the

19    outset, but I should emphasize it here.  That is continuing

20    obligation or continuing duty here.  I think *Rosen* also focused

21    on that.  When you become aware of an adverse report, you have

22    a continuing obligation, under state law, to warn members of

23    the medical community.  And that, also, that continuing

24    obligation, also parallels the FDCA requirement that adverse

25    reports, essentially, be reported to the FDA so they can put it

1              BARONE VS. BAUSCH & LOMB, ET AL

2     on the MAUDE system.

3              MR. SMULIAN:  It doesn't parallel it.

4              THE COURT:  I cut you off and then was turning to

5     Mr. Lipari.  Any other points that you wanted to make?

6              MR. SMULIAN:  One final one with regard to the

7     implied preemption and the idea that *Buckman* is limited to

8     precluding a stand-alone fraud on the FDA claim is not true,

9     both because of the cases, and there are many of them we cited

10    in our brief, including cases from the Eleventh Circuit and

11    even more recently from the Supreme Court in the case of *Pliva*

12    *vs. Mensing*, 564 U.S. 604 on page 619.  *Pliva vs. Mensing*

13    referred to *Buckman* and was cited for the proposition

14    specifically that, quote, "Federal drug and medical device laws

15    preempted the state law tort claim based on the failure to

16    properly communicate with the FDA."  *Buckman* has a much broader

17    scope than merely precluding fraud on the FDA claims.  *Buckman*

18    precludes claims that are based on attempt to privatize any

19    portion of the FDCA.

20             THE COURT:  Okay.  Final point.

21             MR. LIPARI:  Sure, your Honor, thank you.  So, let

22    me just say, it appears, distilling this to its essence,

23    Defendant is taking the position that Judge Wexler got it right

24    and that the *Rosen* case was decided incorrectly.  And the

25    Defendant has indicated that the weight of authority is on his

1                    BARONE VS. BAUSCH & LOMB, ET AL

2      side.  I would just say, if you do a one-for-one comparison,

3      there is actually a logical analysis that cites to tort law and

4      tort juris prudence in the *Rosen* case that is absent from the

5      *Pearsall* case.  And finally, Defendant has gone outside the

6      Second Circuit and he has pointed to a hodge-podge of various

7      cases in various circuits, but the issue was decided correctly

8      in *Rosen*.  And within the last two weeks, one case that has

9      been reported, and it's from the Third Circuit, but --

10                    THE COURT:  I saw it.

11                    MR. LIPARI:  The *Bull vs. St. Jude?*

12                    THE COURT:  The jury verdict?

13                    MR. LIPARI:  I was referring to a motion to

14      dismiss where they go through the very analysis in the Third

15      Circuit.  I could give your Honor the cite.

16                    THE COURT:  Could you give me the cite?

17                    MR. LIPARI:  Bull vs. St. Jude, 2018 U.S. District

18      Lexis 115730.

19                    THE COURT:  115730?

20                    MR. LIPARI:  Correct, your Honor.  And it was

21      essentially -- and I'll be very, very quick.  The failure to

22      warn survived the motion to dismiss scrutiny, this involved

23      Riata Lead, which are a Class 3 medical device.  The Court

24      ruled that Plaintiff's state law claim identifies a state duty

25      to warn physicians of risks inherent to medical devices through

1                      BARONE VS. BAUSCH & LOMB, ET AL

2      reporting, which makes its way onto the MAUDE system, and that

3      is parallel to Defendant's duty to comply with adverse

4      reporting requirements.

5                      THE COURT:  Okay.  That is not cited in your

6      papers because it was just --

7                      MR. LIPARI:  Correct, your Honor.  I think Lexis

8      just published it within the last couple of days.

9                      THE COURT:  Let me give you the cites that have

10     caused me -- and this is by no means comprehensive, it was

11     based on mine and my law clerk's research leading up to the

12     subject matter jurisdiction.  There is the Connecticut case

13     that I cited at the outset.  I would note as well on page 34 of

14     the Connecticut decision, the case the Court distinguishes

15     *Bowdrie vs. Sun Pharmaceutical Industries*, the Eastern District

16     of New York case from 2012 that Bausch & Lomb cited in its

17     Notice of Removal, and, among other things, it was a pre *Gunn*

18     case, that is what the court says, and then it goes on to

19     distinguish it.  There is a case from the Eastern District of

20     Virginia, it's *Carmine vs. Poffenbarger*, 154 F. Supp. 3d 309,

21     Eastern District of Virginia from 2015.  Case from the Western

22     District of Texas, *Maher vs. Vaughn, Silverberg & Associates*,

23     95 F. Supp. 3d 999, Western District of Texas from 2015.  An

24     unreported case from the Eastern District of Kentucky, *Newsome*

25     *vs. Bayer Corporation*, 2018 Westlaw 1906103, that is 1906103

1             BARONE VS. BAUSCH & LOMB, ET AL

2     from April 23, 2018, and it involves a failure to conform with

3     FDA post-marketing monitoring requirements of a Class 3 medical

4     device.  And the Court held that reporting requirements do not

5     implicate substantial federal issues.  Preemption does not

6     alone raise a substantial federal issue.  And there is another

7     Texas case, this is *Windle vs. Synthes USA Products*, 2012

8     Westlaw 1252550 from April 13th, 2012.  And then *In Re Vioxx*

9     *Products Liability Litigation*, 843 F. Supp 2d 654, Eastern

10    District of Louisianna from January 3, 2012.  Court held it was

11    not substantial because even if there is a violation of FDA

12    disclosure requirements, the federal question would be resolved

13    in the context of whether the conduct was a violation of state

14    law.

15             I will say, based on my review -- and actually,

16    just to make the record complete, what initially led me down

17    this path was a case from California, which may have been cited

18    by somebody in the papers, it was *Sangimino vs. Bayer Corp.*,

19    2017 Westlaw 2500904, this is Northern District of California

20    from -- I've written on the month -- I think June 9th, 2017,

21    where the Court says that "It is settled law that you cannot

22    remove to Federal Court on the basis of a federal defense,

23    including federal preemption."  I appreciate here that B & L is

24    arguing this isn't a defense that has gotten us here, it's the

25    claim that is based on the violation of the reporting

```
 1                 BARONE VS. BAUSCH & LOMB, ET AL
 2    requirements to the FDA.  But there is still state law causes
 3    of action.  And based on my reading of these cases, the fact
 4    that you're relying on a duty to report under federal law to
 5    craft a state law cause of action would not constitute a
 6    substantial question of federal law so as to get you into
 7    federal court.  And that is why I went back, and I think I went
 8    -- actually had to go onto PACER to look at both Pearsall and
 9    Rosen, how those cases ended up in federal court, and my
10    recollection is they are both diversity cases.  So this is a
11    threshold issue that we're going to have to sort through before
12    I get to the other issues.
13                 MR. LIPARI:  Your Honor, so, and perhaps I'm sort
14    of jumping ahead, but so does your Honor want the parties to
15    brief this threshold issue?
16                 THE COURT:  Yes.  And let's set a briefing
17    schedule.  I guess, I wanted to give you the cases that I had
18    looked at so that if you can distinguish them, go ahead and do
19    that.  These are the cases that I was looking at that was
20    leading me to the potential conclusion.
21                 MR. LIPARI:  And, your Honor, so this, the
22    briefing on the motion to dismiss then should be held in
23    abeyance holding the briefing on the matter of subject matter
24    jurisdiction?
25                 THE COURT:  Well, I'm not going to make a decision
```

1                    BARONE VS. BAUSCH & LOMB, ET AL

2       on the motion to dismiss until I get through this issue.  I

3       wasn't going to require any more briefing on the motion to

4       dismiss.  So let's talk about process and timing.  You know, my

5       view is that I should hear first from Bausch & Lomb, and then

6       give the Plaintiff an opportunity to respond to that, and then

7       give you an opportunity to reply.

8                    MR. SMULIAN:  That would -- we would appreciate

9       that, your Honor.

10                   THE COURT:  Any issue with that, Mr. Lipari?  I

11      mean, it's Bausch & Lomb's burden to establish jurisdiction

12      since that is the entity that removed this into federal court.

13                   MR. LIPARI:  No, your Honor.

14                   THE COURT:  How much time would you be requesting

15      to brief this issue?

16                   MR. SMULIAN:  Three weeks?

17                   THE COURT:  Okay.  So today is the 27th.  So by

18      September 17th, Bausch & Lomb needs to file a memo addressed to

19      this issue.  I'll give the Plaintiff three weeks to respond.

20      Does that work?

21                   MR. LIPARI:  Thank you, your Honor.

22                   THE COURT:  That will take you to October 8th.

23      And then I'll give Bausch & Lomb -- I'll give you 10 days for

24      any reply.  So we'll push it out to the end of the week,

25      October 19th for a reply.

```
1                    BARONE VS. BAUSCH & LOMB, ET AL
2                    MR. SMULIAN:  Thank you, Judge.
3                    THE COURT:  You're welcome.  We'll issue a text
4          order just confirming those deadlines.
5                    MR. SMULIAN:  And then --
6                    THE COURT:  I wasn't -- if I, after receiving that
7          briefing, if I feel the need for oral argument, I'll notify
8          you.  I hate to -- I know most of you, at least, are coming
9          from out of town.  I don't want to have to make you do that
10         again.  Maybe we can do it by telephone if I have specific
11         questions on the subject matter jurisdiction issue.  But I'll
12         reserve on that issue until I see the briefing from both
13         parties.  Again, I did not have an opportunity to exhaustively
14         look into this issue.  Neither one of you have briefed the
15         issue, other than, I suppose, what is set forth in the Notice
16         of Removal, but I do have some concerns about whether or not I
17         have subject matter jurisdiction.  So, that is where things
18         stand.  So, otherwise, I'll reserve on the motion to dismiss.
19         And as I said, I won't be resolving that until I sort through
20         the subject matter jurisdiction issue.  So, if after reviewing
21         the briefing, conclude I do have subject matter jurisdiction,
22         then I'll be issuing a decision that, point one, will address
23         jurisdiction, and then dealing with the motion to dismiss.  But
24         if I decide I don't have subject matter jurisdiction, then I'll
25         be issuing a decision remanding this to state court.  All
```

```
1                    BARONE VS. BAUSCH & LOMB, ET AL
2     right?  Any questions from the Plaintiff's perspective?
3                    MR. LIPARI:  No, your Honor, thank you.
4                    THE COURT:  All right.  From Bausch & Lomb's
5     perspective?
6                    MR. SMULIAN:  No, Judge.  Thank you.
7                    THE COURT:  Anything else from the other Defense
8     Counsel?
9                    MR. PAULINO:  No, your Honor.
10                   MR. VONWALDOW:  No, your Honor.  Thank you very
11    much.
12                   THE COURT:  And I don't know, you're welcome to, I
13    wasn't anticipating that you would brief on behalf of your
14    clients this issue of jurisdiction.  But it pertains to
15    codefendants, too.  So, if, in fact, you do want to brief the
16    issue, you would have the same deadlines as Bausch & Lomb does.
17    Okay?
18                   MR. VONWALDOW:  Sounds good, thank you.
19                   THE COURT:  All right.  Thank you very much,
20    everybody.  Safe travels back.
21                   MR. SMULIAN:  Thank you, Judge.
22
23
24
25
```

1

2

3                                    *  *    *

4                        <u>CERTIFICATE OF REPORTER</u>

5

6        I certify that the foregoing is a correct transcript of the

7     record of proceedings in the above-entitled matter.

8

9     <u>S/ Karen J. Bush,</u> RPR

10
      Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25